UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMAD AZAB,

Case No. 2:25-cv-12915

               Plaintiff,

v.

Linda V. Parker
United States District Judge

GENERAL MOTORS LLC,

Curtis Ivy, Jr.
United States Magistrate Judge

             Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND
<u>AMENDED COMPLAINT AND (ECF Nos. 20, 26)</u>**

Pending before the Court are Defendant General Motors LLC's *Motion to Dismiss Pursuant to FRCP 12(b)(6)* (ECF No. 20) and Plaintiff Mohammad Azab's *Motion for Leave to File Second Amended Complaint* (ECF No. 26).  On October 31, 2025, the District Judge referred all pretrial matters to the undersigned. (ECF No. 24).

**I.      BACKGROUND**

On September 15, 2025, Plaintiff, proceeding pro se, filed his initial complaint against his former employer, Defendant General Motors LLC, alleging violations of State and Federal Law.  (ECF No.1).  On September 22, 2025, Plaintiff filed his First Amended Complaint as a matter of course, which is the operative complaint.  (ECF No. 14).  Plaintiff named General Motors LLC as the

sole Defendant.  (*Id.*).  Plaintiff was employed by Defendant GM from September 2021 to September 2024 as a Senior Software Engineer.  (*Id.* at PageID.128, ¶ 6).

Plaintiff claims that Defendant made misrepresentations about the position that was offered to him, which induced him to leave his previous job and forfeit benefits.  (*Id.* at PageID.128, ¶ 8).  The benefits allegedly forfeited upon accepting GM's offer of employment included: "$80,000 in unvested equity and long-term career stability."  (*Id.*).  The alleged misrepresentations centered on Plaintiff's job title with GM, specifically, Plaintiff asserts that he was recruited by GM as a Lead CFD Engineer—a position that was "not part of GM's internal classification system."  (*Id.* at ¶ 7).  Plaintiff subsequently discovered that he was classified as a Senior Software Engineer.  (*Id.* at ¶ 9).  Plaintiff claims that that title does not correspond to the "Lead" or "Staff" role that he was recruited for.  (*Id.*).  Plaintiff claims that the title he was recruited for did not exist, and therefore, the title was misrepresented to him by GM.

Defendant moved to dismiss Plaintiff's First Amended Complaint arguing that his claims are barred by the release agreement that Plaintiff signed on September 11, 2024.  (ECF No. 20, PageID.281).  Plaintiff argues that the release agreement is invalid because it was "procured through a continuous pattern of fraud, omission, economic coercion, and retaliatory concealment[.]"  (ECF No. 26, PageID.283).  Defendant also moved to dismiss Plaintiff's First Amended

Complaint on three separate grounds: (1) Plaintiff allegedly failed to file a charge of discrimination with the EEOC in connection with his Title VII Retaliation claim; (2) Plaintiff allegedly failed to state a claim of retaliation under both Title VII and the ELCRA; and (3) Plaintiff allegedly failed to state a claim for wrongful discharge.  (ECF No. 20, PageID.185).

Plaintiff moved to amend and seeks to add claims for violations of ERISA § 510 Interference and the WARN Act, 29 U.S.C. § 2101, *et seq.*, and to clarify "chronology and dates[.]"  (ECF No. 26, PageID.267).  Defendant responded, requesting that the Court deny Plaintiff's motion arguing that "amendment is futile."  (ECF No. 27).  Plaintiff then submitted a reply in support of his motion. (ECF No. 28).  The matter has been fully briefed and is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once, as a matter of course, within twenty-one days of service.  Rule 15(a)(2) provides that leave to amend a complaint shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The court examines several factors when determining whether it is appropriate to grant leave to amend a complaint. Those factors include, "undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party."  *Knight*

*Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (citing *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005)).

Rule 15(a) favors granting leave to amend.  Its purpose is to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings."  *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).  A proposed amendment is futile when it would not "permit the complaint to survive a motion to dismiss."  *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980).  To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint must satisfy Rule 12(b)(6)'s pleading requirement.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) requires a party to "state a claim upon which relief can be granted[.]"  To survive a Rule 12(b)(6) motion, the proposed complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A proposed claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

## III. ANALYSIS

Plaintiff seeks to add claims for ERISA § 510 Interference and violation of the WARN Act. Defendant argues that the Court should deny Plaintiff's motion to amend because amendment would be futile, as Plaintiff's claims are barred by a release agreement Plaintiff signed.[1] The Court addresses each issue in kind.

### A. Separation Agreement

The Court must first address Defendant's assertion that Plaintiff's claims are barred by the General Motors Severance Program Release Agreement ("Release Agreement") that Plaintiff signed on September 11, 2024. To begin, the Sixth Circuit Court of Appeals held that "the release of a federal cause of action in the employment context is valid as long as the release is knowingly and voluntarily executed." *Petersen v. W. Mich. Cmty. Mental Health*, No. 1:10-CV-12, 2010 WL 3210749, at *3 (W.D. Mich. Aug. 10, 2010), *aff'd*, 468 F. App'x 608 (6th Cir. 2012) (citing *Adams v. Philip Morris, Inc.*, 67 F.3d 580 (6th Cir. 1995)). In *Adams*, the court set forth five factors to consider when determining whether an agreement was entered into knowingly and voluntarily. 67 F.3d at 583. The factors include: "(1) Plaintiff's experience, background, and education; (2) the

---

[1] In its response to Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 26), Defendants raise arguments directed at claims asserted in Plaintiff's First Amended Complaint. (ECF No. 14). Because those claims are already properly before the Court and are the subject of Defendant's Motion to Dismiss, the Court will not address those arguments in the context of Plaintiff's motion for leave to file an amend complaint.

amount of time the Plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.* Additionally, the Sixth Circuit has rejected attempts to invalidate release agreements based on claims of economic pressure, arguing that such pressure does not amount to economic duress. *Id.* Furthermore, a public policy rationale lies at the base of these decisions. *See Dorn v. Gen. Motors Corp.*, 131 F. App'x 462, 468 (6th Cir. 2005) ("Good reasons exist to continue to recognize the standard set in *Adams*; recognizing economic duress in situations like those in *Adams* and the present case would invalidate most, if not all, releases of claims in agreements conferring severance benefits on employees."). It is safe to assume that most, if not all, employees experience economic pressure when faced with the decision of whether to accept a severance package. *Id.*

Plaintiff argues that the release agreement should be invalidated because it was "executed in the midst of a continuous course of misrepresentation and retaliatory concealment[.]" (ECF No. 26, PageID.281–83). Plaintiff has attached a copy of the agreement to his proposed Second Amended Complaint; therefore, it is proper to consider the contract at this stage. Fed. R. Civ. P. 10(c); *See Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when

6

ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.”); *Havenick v. Network Exp., Inc.*, 981 F. Supp. 480 (E.D. Mich. 1997) (“[T]he Court may properly consider, for the purposes of a Motion under Fed. R. Civ. P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment.”).  The release agreement states in pertinent part: “[Plaintiff] hereby releases, waives, and forever discharges the company . . . from any and all claims . . . that arise out of, relate to, or are connected with:” Plaintiff’s employment, compensation, and benefits, among others.  (ECF No. 26, PageID.308).  Plaintiff does not dispute signing the release agreement.

The Court begins its analysis by applying the five-part test given in *Adams*. 67 F.3d 580.  First, Plaintiff is an experienced engineer who held the position of “Lead R&D Engineer” at his previous place of employment prior to joining General Motors as a senior employee.  (ECF No. 14, PageID.128, ¶8).  Plaintiff holds a Ph.D. and has competently litigated this case without the assistance of counsel.  (*Id.* at PageID.127, ¶4).  Second, Plaintiff was given forty-five days to consider, sign, and return the release agreement to his employer.  (ECF No. 26, PageID.309).  The release agreement also states: “Employee understands that if Employee signs this Agreement, Employee can change Employee’s mind and

revoke it within seven-calendar days after signing it by returning it with written revocation notice[.]" (*Id.* at PageID.310).  Thus, Plaintiff was put on notice that he could revoke the agreement if he chose to do so.  Third, the waiver is written clearly and in plain language without being bogged down by technical legal jargon. (*Id.* at PageID.308-15).  Fourth, the consideration received by Plaintiff was the benefits provided through the date specified in the agreement.  (*Id.* at PageID.308). The Court finds, and it does not appear that the Parties dispute, that the first four factors have been met.

That said, regarding the final factor, Plaintiff claims that Defendant misrepresented the date through which it agreed to pay Plaintiff's compensation and/or benefits through.  Specifically, Plaintiff argues that he did not receive the full amount of compensation and/or benefits promised to him under the Release Agreement.  Essentially, Plaintiff claims he may not have accepted the terms of the agreement had they differed from the terms represented to him.

"Whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-TMP, 2014 WL 1330309, at *7 (W.D. Tenn. Mar. 28, 2014) (quoting *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)).  Accordingly, we must assess the validity of the agreement under Michigan law, which governs the Release

Agreement. In Michigan, "[a] release is invalid if (1) the releasor was acting under duress, (2) there was misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release. *Brooks v. Holmes*, 163 Mich. App. 143, 145 (1987) (collecting cases). Plaintiff alleges that Defendant's "promised wages and benefits" as if employed through October 18, 2024, but internally used an earlier date for ending medical coverage, bonus accrual, and 401(k) vesting. (ECF No. 28, PageID.441). In essence, Plaintiff argues that he did not receive the benefit of his bargain.

As stated, the first four factors indicate that the release was knowingly and voluntarily executed, weighing in favor of Defendant. But the final factor applies the "totality of the circumstances" standard. At the motion to dismiss stage, accepting Plaintiff's allegations as true that a material part of the contract was misrepresented, the facts as pleaded are sufficient to state a claim upon which relief can be granted. Courts have held that "dismissal of Plaintiffs' claims on the basis of [a release agreement] would not be appropriate at the pleadings stage." *Clough*, 2014 WL 1330309, at *7. Further, courts are "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Kanas v. G. Ghannam DDS, P.C.*, No. 2:25-CV-11657-TGB-APP, 2026 WL 459252, at *6 (E.D. Mich. Feb. 18, 2026) (quoting *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013)).

9

Applying these holdings to the context of Defendant's argument that allowing Plaintiff to amend his complaint would be futile, the Court finds the Plaintiff has sufficiently plead that there was a misrepresentation as to the nature of the release agreement and/or duress.  Whether Plaintiff can ultimately prove his allegation of fraud "should be determined on a motion under Rule 56 or at trial, once the facts are developed." *Venture Glob. Eng'g, LLC v. Satyam Comput. Servs., Ltd.*, 730 F.3d 580, 589 (6th Cir. 2013).  Accordingly, Plaintiff's motion to amend his complaint is granted.

### B.   Proposed Amended Complaint

#### 1.   ERISA § 510 Interference

To begin, the Sixth Circuit recognizes two types of claims under § 510: (1) "an 'exercise' or 'retaliation' claim . . . where 'adverse action is taken because a participant availed himself of an ERISA right'; and (2) an 'interference' claim where adverse action is taken as 'interference of the attainment of a right under ERISA.'" *Hamilton v. Starcom Mediavest Grp.*, Inc., 522 F.3d 623, 627–28 (6th Cir. 2008) (quoting *Dunn v. Elco Enters., Inc.*, No. 05-71801, 2006 WL 1195867, at *1 (E.D. Mich. May 4, 2006)); *see also* 29 U.S.C. § 1140.  "To state a claim under ERISA, a plaintiff must demonstrate (through direct or substantial evidence) that an employer had a specific intent to violate ERISA by taking the employment action that caused the adverse effect to the plaintiff." *Spangler v. E. Ky. Power*

*Coop., Inc.*, No. CV 5: 18-556-DCR, 2018 WL 6424693, at *3 (E.D. Ky. 2018), *aff'd*, 790 F. App'x 719 (6th Cir. 2019) (citing *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)).  Further, if direct evidence of discriminatory intent is unavailable, the plaintiff may make a prima facie showing by demonstrating: "(i) prohibited employer conduct, (ii) taken for the purpose of interfering (iii) with the attainment of any right to which the employee may become entitled."  *Id.*

Defendant does not assert that Plaintiff has filed this motion to amend with bad faith or dilatory motive.  Nor does Defendant argue that timing is an issue. Defendant attacks Plaintiff's proposed amended complaint on futility grounds. (ECF No. 27, PageID.404).  Defendant argues that Plaintiff's motion to amend is futile because his claims would not survive a Rule 12(b)(6) motion to dismiss due to Plaintiff's signing of the release agreement.  (*Id.* at PageID.417–18).  As addressed above, the Court has already rejected this argument.

Plaintiff asserts that his Second Amended Complaint "(1) clarifies chronology and dates, and (2) adds two federal counts based on facts already briefed . . . [and] [g]ranting leave will streamline the case[.]"  (ECF No. 26, PageID.267).  Plaintiff asserts that Defendant intentionally modified the date of separation for his employment to avoid paying out benefits owed to Plaintiff. Taken as true, this violates § 510 of ERISA because it is prohibited employer conduct "taken for the purpose of interfering with the attainment of any right to

11

which the employee may become entitled." *Smith*, 129 F.3d at 865. Plaintiff claims that Defendant "tied all benefit outcomes to the earlier date" and therefore interfered with Plaintiff's ability to receive benefits. (ECF No. 28, PageID.446). Accepting these allegations as true, Plaintiff's proposed claim is plausible on its face.

Furthermore, as Plaintiff asserts in his reply brief Defendant fails to address the specific details of Plaintiff's ERISA claim. (ECF No. 28). Defendant's response brief addresses only Plaintiff's allegation that Defendant failed to disclose a potential ERISA claim and therefore misled Plaintiff. (ECF No. 27, PageID.419). Defendant does not, however, mention Plaintiff's allegations that Defendant intentionally chose an earlier separation date to prevent Plaintiff's 401(k) from vesting and in doing so reduced his bonus. (ECF No. 28, PageID.446). Because Defendant does not address these allegations in its response brief, the Court treats the allegations as undisputed for the purposes of this motion. Taken as true, Plaintiff has plausibly stated a claim upon which relief can be granted, and motion to amend as to this claim is granted.

### 2. WARN Act

The WARN Act, codified at 29 U.S.C. §§ 2101–09, provides that an employer must give affected employees at least sixty days' notice before a plant closing or mass layoff. "An employer who fails to give the required notice, or pay

12

in lieu thereof, may be liable for civil penalties to the local government and for specified damages to affected employees." *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 840 (6th Cir. 2011).  Here, Defendant asserts that it fulfilled its WARN Act requirements by providing Plaintiff with sixty days' notice of his layoff and with "the value of wages and benefits paid in lieu of the last 45 days of the notice period[.]"  (ECF No. 27, PageID.434).  Yet Plaintiff disputes this assertion, arguing that he did not receive the full 45-day value of his wages and benefits as allegedly promised.  (ECF No. 28, PageID.445).  Plaintiff asserts that this discrepancy in pay resulted in a violation of the WARN Act.  Taken as true, Plaintiff has plausibly stated a claim upon which relief can be granted, and motion to amend as to this claim is granted.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's *Motion for Leave to File Second Amended Complaint* (ECF No. 26) is **GRANTED**, and Defendant's *Motion to Dismiss Pursuant to FRCP 12(b)(6)* (ECF No. 20) is **DENIED** as moot. Plaintiff is **DIRECTED** to file his Second Amended Complaint **on or before July 14, 2026**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: July 7, 2026        s/Curtis Ivy, Jr.
                                  Curtis Ivy, Jr.
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on the July 7, 2026, by electronic means and/or ordinary mail.

                                  s/Sara Krause
                                  Case Manager
                                  (810) 341-7850